IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL MATTEI, | Case No. |
| Plaintiff, | Judge |
| | Magistrate Judge |
| v. | |
| MARVEL GROUP, INC., | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

Plaintiff Daniel Mattei, through his attorneys, Barlow, Kobata & Denis LLP, for his Complaint against Marvel Group, Inc. (herein "Defendant"), states as follows:

### NATURE OF ACTION

1. Plaintiff is a former employee of Defendant. This action is brought pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C. §12101 *et. seq.* (hereafter, the "ADA"), involving employment discrimination, a failure to accommodate, and retaliatory actions, and pursuant to the Family Medical Leave Act (hereinafter, the "FMLA"), involving the denial of FMLA benefits, interference with Plaintiff's FMLA rights, and retaliation for Plaintiff's request for FMLA benefits. The Plaintiff is seeking injunctive relief and damages to redress discriminatory, failure to accommodate, and retaliatory employment practices by the Defendant.

### JURISDICTION

2. Federal jurisdiction arises under the provisions of the ADA, 42 U.S.C. §12101 *et seq.*, and the FMLA, 29 U.S.C. §2601et seq. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343 based on federal question jurisdiction.

**VENUE**

3. Pursuant to 28 U.S.C. §1391, venue lies in the Northern District of Illinois in that Plaintiff is and was a resident in this District, Defendant is and was engaged in a business in this District, and a substantial part of the alleged events or omissions giving rise to the claims occurred in this District.

**PARTIES**

4. Plaintiff worked for Defendant as a shear operator in the Fabrication Department in Defendant's Chicago, Illinois plant. Plaintiff started work for the Defendant on October 1, 2012. Plaintiff was terminated from Defendant's employment on August 27, 2015.

5. At all pertinent times, Defendant has continuously been and is now an employer either engaged in interstate commerce or an activity affecting commerce, and was an "employer" within the meaning of the ADA and the FMLA.

6. At all pertinent times, Defendant has employed more than fifteen (15) employees within the meaning of the ADA. The Defendant has also employed more than 50 employees within the meaning of the FMLA.

7. At all pertinent times, the Plaintiff has been an employee subject to the ADA and also the FMLA, and Defendant has been an employer subject to the ADA, and also subject to the FMLA, 29 U.S.C. §2601.

8. At all pertinent times in 2015, the Defendant employed more than one hundred (100) employees.

9. Plaintiff has signed a Consent to become a Party Plaintiff under the FMLA, a copy of which is attached as Exhibit A.

2

## PROCEDURAL BACKGROUND

10. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (herein, "EEOC") alleging that Defendant violated the ADA. Plaintiff timely filed a Charge of Discrimination with the EEOC on September 15, 2015.

11. The EEOC issued Plaintiff a Notice of Right to Sue letter dated April 5, 2016, entitling him to institute a civil action within ninety (90) days of the date of his receipt of that EEOC Notice. Plaintiff has timely filed this lawsuit alleging ADA violations following his receipt of the EEOC's Notice of Right to Sue letter. A true and correct copy of the EEOC Notice of Right to Sue is attached hereto as Exhibit B.

12. Plaintiff has fulfilled all conditions precedent to the institution of this lawsuit under the ADA.

## COUNT I
## AMERICANS WITH DISABILITIES ACT

13. At all pertinent times, Plaintiff was a qualified individual with a disability within the meaning of 42 U.S.C. §12101(2)(A), 42 U.S.C. §12102(2)(B), and 42 U.S.C. §12102(2)(C) of the ADA.

14. At all pertinent times, Plaintiff had one or more impairments within the meaning of the ADA that substantially limited one or more of his major life activities within the meaning of the ADA. Plaintiff at all pertinent times also had a record of such an impairment, and was regarded as having such an impairment by Defendant. Plaintiff's impairments constitute a disability as that term is defined in §12101(2)(A), (B), and (C) of the ADA. His impairments included being diagnosed as having schizophrenia and paranoia.

15. At all pertinent times, the Plaintiff was qualified to perform the essential functions

of his job, with or without a reasonable accommodation, within the meaning of the ADA.

16. The Plaintiff had an impairment and disability within the meaning of the ADA.

17. While the Plaintiff was an employee of the Defendant, the Plaintiff had a disability involving schizophrenia and paranoia.

18. While the Plaintiff was an employee of the Defendant and Defendant's Personnel Manager Dane Nakasima were aware that Plaintiff had a disability involving schizophrenia and paranoia, that he had been diagnosed with having schizophrenia and paranoia, and that he asked for an accommodation.

19. While the Plaintiff was an employee of the Defendant and Personnel Manager Dane Nakasima were aware that Plaintiff had a disability and Defendant and Personnel Manager Dane Nakashima also regarded the Plaintiff as having a disability.

20. In 2015 Plaintiff's Personnel Manager was Dane Nakashima. Before the Plaintiff's employment was terminated by the Defendant, Mr. Nakashima was aware that Plaintiff had been diagnosed with schizophrenia and paranoia and that Plaintiff had requested to be accommodated, including requesting to be provided a FMLA leave of absence.

21. Among the accommodations that Plaintiff requested was to take time off from work to obtain treatment for his medical condition, including taking a personal leave of absence, to be given the opportunity to apply for disability benefits, to submit a disability claim form for disability benefits, to be given the opportunity to apply for benefits and a leave of absence under the FMLA, to submit a FMLA claim form, and not to be harassed by his co-workers and supervisors.

22. On multiple occasions in 2013, 2014, and 2015, several of Plaintiff's co-workers and one or more of his supervisors made comments to the Plaintiff calling the Plaintiff's mother

4

a "prostitute", a "whore," a "crack whore," calling the Plaintiff a "faggot," telling the Plaintiff that he was "crazy like his mother," and making other derogatory and disparaging comments about the Plaintiff and Plaintiff's mother. Plaintiff repeatedly asked and complained to his co-workers and his supervisors to stop the harassment, to get away from him, to leave him alone, and to tell him why they were making those derogatory and disparaging comments to him. On several occasions during that time period, the Plaintiff complained to the Defendant and its supervisors and managers to stop that harassment and to stop those comments.

23. Notwithstanding the Plaintiff's complaints and requests that his supervisors and co-workers stop their derogatory and disparaging comments about the Plaintiff and his mother, the Defendant did not stop those comments, and Defendant's supervisors and co-workers continued to make derogatory and disparaging comments to the Plaintiff about himself and his mother.

24. On August 13, 2015, which was a Thursday, Mr. Kacprowski made similar derogatory and disparaging comments about the Plaintiff and his mother, including saying that his mother was a "prostitute" and a "whore," and calling the Plaintiff a "nigger." The Plaintiff complained to his supervisor Tad Kacprowski about the derogatory and disparaging comments made to the Plaintiff about himself and his mother, and the Plaintiff asked Mr. Kacprowski to stop making those comments.

25. On August 13, 2015, the Plaintiff also complained to another Defendant manager or employee, including to Slawak Gorzelnlowski, that Mr. Kacprowski had been harassing him, including calling the Plaintiff's mother a "prostitute," and calling the Plaintiff a "nigger" and "a fucking nigger." Defendant's manager or supervisor, including Slawak Gorzelnlowski, told the Plaintiff that these were serious accusations, and at 2:30 PM on August 13, 2015, the Defendant

5

told the Plaintiff was told to go home from work and that it would investigate the Plaintiff's complaints.

26. On August 13, 2015, at approximately 2:50 PM, the Plaintiff's mother called the Defendant, and Plaintiff's mother told the Defendant that the Plaintiff was being harassed at work. The Plaintiff's mother also told the Defendant that somebody wanted to kill the Plaintiff at work.

27. On August 14, 2015, which was a Friday, at 10:30 AM the Plaintiff sought medical treatment from the City of Chicago Department of Public Health. The Plaintiff went to the Chicago Department of Public Health on August 14, 2015 with Norma Tardi, who was the Plaintiff's aunt.

28. On August 14, 2015, an employee from the Chicago Department of Public Health diagnosed the Plaintiff with and wrote a report stating that the Plaintiff had "schizophrenia, paranoid type" and that that was the Plaintiff's diagnosis. An employee from the Chicago Department of Public Health told the Plaintiff and Norma Tardi that the Plaintiff had been diagnosed as having schizophrenia and paranoia, that he needed to take medication, and recommended that the Plaintiff make an appointment with a psychiatrist.

29. Dr. Eleanor Harris was an employee with the Chicago Department of Public Health in August 2015, Dr. Eleanor Harris examined the Plaintiff on August 14, 2015 and diagnosed the plaintiff as "schizophrenia, paranoid type," and Dr. Norris wrote a Chicago Mental Health Comprehensive Report containing her diagnosis and comments. The Plaintiff gave the Defendant a copy of Dr. Harris' August 14, 2015 Chicago Mental Health Comprehensive Report on August 14, 2015.

30. On August 14, 2015 the Plaintiff met with the Defendant and two of Defendant's

6

Managers, Edward Lencioni and Mr. Nakashima. The Plaintiff told the Defendant that he had been harassed by Mr. Kaprowski, that Mr. Kaprowski had told the Plaintiff that he was a "nigger," that his mother was a "prostitute," and made other derogatory and disparaging comments about the Plaintiff and his mother. The Plaintiff also told the Defendant that he, the Plaintiff, had been diagnosed with having schizophrenia and paranoia, and that the Plaintiff wanted an accommodation. The Plaintiff also told the Defendant that he wanted to consult with his aunt Norma Tardi before he could answer more questions. Upon telling Defendant that he had a disability and asking for an accommodation, on Friday, August 14, 2015 Mr. Nakashima told the Plaintiff to go home and not to return to work until further notice.

31. In August 2015 Norma Tardi was the Plaintiff's aunt, and she had authority to act on behalf of the Plaintiff. On August 14, 2015 the Defendant was aware that Norma Tardi was the Plaintiff's aunt and that the Plaintiff asked the Defendant that he be allowed to talk with and consult with his aunt Norma Tardi. In asking to talk with and consult with his aunt Norma Tardi, the Plaintiff requested an accommodation within the meaning of the ADA.

32. On Friday, August 14, 2015, and again on Monday, August 17, 2015, Norma Tardi called the Defendant, including Mr. Nakashima, identified herself as the Plaintiff's aunt, and asked that the Defendant call her so she could discuss the Plaintiff's medical and work situation. In calling both those days, Norma Tardi left voice messages for the Defendant which identified her, requested to speak to Mr. Nakashima on behalf of the Plaintiff, and asked Mr. Nakashima to call her back.

33. As of August 14, 2015, the Defendant was aware of:

    a.    the Plaintiff's diagnosis;

    b.    that the Plaintiff had made a request for help and for an adjustment or

    change in his workplace; and

  c. the Plaintiff had made a request for an accommodation within the meaning of the ADA.

34. On the early morning of Tuesday, August 18, 2015, Norma Tardi called and spoke to Mr. Nakashima. During her telephone conversation with Mr. Nakashima on August 18, 2015, Norma Tardi told Mr. Nakashima that she was the Plaintiff's aunt and that she was calling on behalf of the Plaintiff. Norma Tardi also told Mr. Nakashima that the Plaintiff had sought medical treatment and help, and she described to him the medical condition and diagnosis that the Plaintiff had been given by the Chicago Department of Public Health. Normal Tardi also told Mr. Nashima that the Plaintiff likely needed a leave of absence to seek and obtain medical treatment involving his medical condition and diagnosis, that he wanted to seek medical treatment, and to send to her and/or the Plaintiff forms that the Plaintiff could fill out requesting an accommodation and a leave of absence, including forms under the FMLA and a disability claim form.

35. During their August 18, 2015 telephone conversation, after Norma Tardi told Mr. Nakashima what the doctor had said, she described the diagnosis that was given the Plaintiff, and she asked that the Plaintiff be sent a FMLA form and a disability claim form to fill out, Mr. Nakashima said that the Plaintiff was a good kid, that he and the Company never had any problems with the Plaintiff, and that he would send the Plaintiff and Norma Tardi the requested FMLA and disability claim forms.

36. In telling Mr. Nakashima on August 18, 2015 about the Plaintiff's medical condition and diagnosis and asking that he or she be sent FMLA and disability claim forms, Norma Tardi was acting on behalf of the Plaintiff, and, as of August 18, 2015 the Defendant was

aware the Norma Tardi was acting on behalf of the Plaintiff and had authority to act on behalf of the Plaintiff.

37. As of August 18, 2015, the Defendant was aware of:

    a. the Plaintiff's diagnosis;

    b. that Norma Tardi had made a request on behalf of the Plaintiff involving an adjustment or change in the Plaintiff's workplace;

    c. that Norma Tardi had made a request on behalf of the Plaintiff that the Plaintiff be sent or given FMLA and disability claim forms;

    d. that Norma Tardi had made a request on behalf of the Plaintiff that the Plaintiff be sent or given FMLA and disability claim forms so that he could apply for and request a leave of absence or disability claim benefits; and

    e. that Norma Tardi's requests on behalf of the Plaintiff were a request for an accommodation within the meaning of the ADA.

38. On August 18, 2015, the Plaintiff was examined by Dr. Chou. Dr. Chou was a psychiatrist employed by the Chicago Department of Health. Dr. Chou's diagnosis was "schizo affective disorder," she prescribed that he obtain treatment involving "psychotherapy and medication," she concluded that there was no function capacity limitation on the Plaintiff, she concluded that the date of his first symptoms were when he was twelve years old, and she concluded that his present job with the Defendant could be modified to allow him to work with this impairment.

39. On August 18, 2015, Dr. Chou signed a doctor's note dated August 18, 2015 stating "This patient is fit to return to full duty on 8/26/15."

40. On August 18, 2015, the Defendant was given and received the original of Dr. Chou's doctor date dated August 18, 2015 and stating "This patient is fit to return to full duty on 8/26/15." In asking that the Plaintiff be returned to work on August 26, 2015, Dr. Chou acted on behalf of the Plaintiff, and Dr. Chou's request constituted a request for an accommodation within the meaning of the ADA.

41. On Thursday, August 20, 2015, Dr. Eleanor Harris signed a letter dated August 20, 2015. That letter stated, in pertinent part, "Re: Return to work" and "Daniel Mattei was seen by his doctor on August 18, 2015. He is better now and is able to return to work on August 24, 2015."

42. On August 20, 2015, the Defendant was given and received the original of Dr. Harris' August 20, 2015 letter. In asking that the Plaintiff be returned to work on August 24, 2015, Dr. Harris acted on behalf of the Plaintiff, and Dr. Harris' request constituted a request for an accommodation within the meaning of the ADA.

43. As of August 20, 2015, the Defendant was aware that the Plaintiff had made one or more requests for an accommodation within the meaning of the ADA.

44. It was not an undue hardship for the Defendant to provide the Plaintiff any of the accommodations that he requested on August 14, 18, or 20, 2015, and it would not have been an undue hardship for the Defendant to have provided the Plaintiff any of the accommodations that he requested on either August 14, 18, or 20, 2015.

45. On Friday, August 21, 2015, the Defendant typed up several documents that were titled "Investigation Recap." Those Investigation Recaps covered, among other topics, "We talked about the general feel of the factory and how you felt about the supervisors and their relationships with workers." On Monday, August 24, 2015, the Defendant had several of those

10

typed "Investigation Recap" documents signed and dated.

      46.     On Tuesday, August 25, 2015, Dr. Chou filled out and signed a Disability Claim Form. That Disability Claim Form stated, among other things, that:

      a.     the Plaintiff's symptoms first appeared "since he was 12 years old;"

      b.     that his diagnosis was "schizo affective disorder;"

      c.     described the nature of his treatment as "psychotherapy and medication;"

      d.     with respect to the box under the title "MENTAL/NERVOUS IMPAIRMENT (if applicable)," checked the box stating "Patient is able to function under stress and engage in interpersonal relations (no limitations);"

      e.     in response to the "prognosis" question asking "Have you told the patient to restrict employment activities?" checked the box "no;" and

      f.     in response to the "RETURN TO WORK/CASE MANAGEMENT" section and the question "Can present job be modified to allow the patient to work with impairment?" checked the box "yes."

      47.     The Defendant was sent and received a copy of the August 25, 2015 Disability Claim Form that had the signature of Dr. Chou by August 26, 2015.

      48.     On August 26, 2015, the Defendant was given a "Grievance Report" that had the signature of the Plaintiff, and which, in part, stated, "For the last couple of months I've been harassed by ted. He uses foul language every time he passes by me. He says things like your mom is a crack whore, your mom is a prostitute, and your crazy like your mother(,) so on 08-13-15 I had enough of his disrespect. I went up to him and asked him why was he saying these things to me, and he just told me to go home. I felt a supervisor should not be able to talk to

employees like this and get away with it. I just want to get back to work and not be harassed."

49. On August 27, 2015, the Defendant decided to discharge the Plaintiff. Mr. Nakashima filled out a form with the title "EMPLOYMENT TERMINATION OF:" and dated that form "8/27/15."

50. In a September 11, 2015 letter to Dale Fijalkowski, Mr. Nakashima stated, among other things, "Therefore, by terminating Daniel Mattei we only hop he can get the treatment and find A more peaceful surrounding elsewhere to be less stressful and be peace with himself."

51. The Defendant denied the accommodations that the Plaintiff requested in August 2015. In August 2015, the Defendant did not offer any accommodations to the Plaintiff. It would not have been an undue hardship for the Defendant to offer the Plaintiff the accommodations he requested in August 2015.

52. In deciding to terminate the Plaintiff and to deny the Plaintiff the accommodations he requested in August 2015, the Defendant did not decide that the Plaintiff's requests for the accommodations or changes or adjustments that he requested were either prohibitively expensive, would unduly disrupt the ordinary course of its business, or would involve a significant difficulty or expense incurred by it.

53. In deciding to terminate the Plaintiff and to deny the Plaintiff the accommodations he requested in August 2015, the Defendant did not consider the nature and net cost of the accommodation, the overall financial resources of its facility, the number of persons employed at its facility, and the effect on its expenses, and resources, or any other factors described in 42 U.S.C. §12111(10)(A) or 29 CFR §1630.2 of the EEOC's Regulations.

54. In deciding to terminate the Plaintiff and to deny the Plaintiff the accommodations he requested in August 2015, the Defendant did not request a second medical opinion for the

Plaintiff, or seek the advice of a psychiatrist or doctor, or ask the Plaintiff to take a fitness for duty medical examination.

55. During the Plaintiff's employment with the Defendant, other employees who either asked for a leave of absence, to be allowed to be given or to submit either FMLA or disability claim forms, to allow relatives or other authorized persons to talk to about their work situation or to consult with, to be given time off from work to consult with a doctor or for other medical treatment, or asked or complained that they not be harassed by a supervisor or co-worker have been extended those opportunities.

56. Defendant harassed, disciplined, discharged, failed to reinstate or rehire, and retaliated against the Plaintiff because he asked for an accommodation and in retaliation because he complained about the harassment by his co-workers and supervisors and the Defendant's failure to accommodate him.

57. Defendant violated the ADA when it failed to accommodate the Plaintiff, disciplined him, discharged him, failed to reinstate or rehire him, discriminated against the Plaintiff regarding his terms and conditions of employment, harassed him, and retaliated against him.

58. Because of the Plaintiff's disability and/or because Defendant regarded him as being disabled, Defendant has discriminated against the Plaintiff in regards to his advancement, compensation, and other terms, conditions, and privileges of employment in violation of the ADA.

59. Defendant violated the ADA when it disciplined, discharged, and failed to reinstate or rehire the Plaintiff because it regarded him as having an ADA covered disability.

60. The discriminatory and retaliatory employment acts and policies, practices, and

customs of Defendant violated the rights guaranteed by the ADA.

61. The Plaintiff was unlawfully denied an accommodation, disciplined, discharged, harassed, denied reinstatement or rehire, and retaliated against in violation of the ADA.

62. The discriminatory and retaliatory acts of Defendant and its agents and employees were deliberate, intentional, and were done with malice or with reckless indifference to the Plaintiff's federally protected civil rights.

63. The justifications that Defendant had for its actions and conduct were pretextual and not taken in good faith.

64. Because of Defendant's discriminatory and retaliatory actions and refusals, the Plaintiff was damaged and has suffered the loss of wages, benefits, humiliation, embarrassment, and other compensatory damages.

65. The acts complained of were ratified, authorized, and permitted by Defendant and its officers, managers, and supervisors.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court enter an order as follows:

A. The Court should declare, decree, and adjudge that Defendant has violated the ADA;

B. Grant an injunction against Defendant and its officers, agents, and managers from violating the ADA, and protecting the Plaintiff;

C. Enter appropriate injunctive relief against Defendant and its officers, agents, and managers to comply with the ADA and refrain from discriminating and retaliating against the Plaintiff and interfering with his rights and protections under the ADA;

D. Enter appropriate injunctive relief awarding the Plaintiff the back pay, front pay, and other employment benefits that he was denied or lost;

E. Order the Defendant to pay compensatory and punitive damages in an amount sufficient to punish the Defendant for its past discrimination and retaliation and to deter it from continuing with its discriminatory and retaliatory practices;

F. Award pre-judgment and post-judgment interest;

G. Award the Plaintiff his reasonable attorney's fees and costs; and

H. Award such other and further relief as is just and appropriate, including nominal damages.

## COUNT II
## FMLA

66. The paragraphs 1 to 9, 17-50, and 55 are re-alleged and incorporated as though fully set forth herein in Count II.

67. This is an action brought under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §2601 et. seq., and the Court has jurisdiction of this action pursuant to Section 2601 of the FMLA.

68. Prior to August 13, 2015 the Plaintiff was qualified for and satisfactorily performed his job duties as an employee of Defendant.

69. As of August 1, 2015, the Plaintiff was an employee of the Defendant within the meaning of the FMLA and eligible to receive FMLA benefits.

70. Prior to August 1, 2015 the Plaintiff had more than 1,250 hours of service within the prior twelve months and had more than twelve months of service.

71. As of August 1, 2015 the Plaintiff was eligible to take an FMLA leave of absence,

the Defendant had more than fifty employees at its Chicago location, and the Defendant was subject to the requirements of the FMLA.

72. As of August 14, 2015, the Plaintiff had a serious health condition. The nature of the Plaintiff's health condition, the nature of his incapacity, and how he had a serious health condition within the meaning of the FMLA was described and told to the Defendant by the Plaintiff on August 14, 2015, by Norma Tardi on August 18, 2015, in Dr. Harris' Chicago Mental Health Comprehensive Report dated August 14, 2015, and in Dr. Chou's August 25, 2015 Disability Claim Form.

73. The Defendant was told by the Plaintiff on August 14, 2015, by Norma Tardi on August 18, 2015, in the August 14, 2015 Dr. Harris Chicago Mental Health Comprehensive Report, and in the August 25, 2015 Disability Claim Form bearing the signature of Dr. Chou the nature of the Plaintiff's condition, the nature of his incapacity, how the Plaintiff was seeking medical treatment, how he was being treated by a doctor, and that he needed to take time off due to his medical condition and obtain medical treatment.

74. The Defendant had enough information as of August 14th, 18th, and again as of August 25th regarding the nature of the Plaintiff's medical and serious health condition, the reasons why he was incapacitated, and the nature of the Plaintiff's medical condition and treatment to determine that the Plaintiff had requested FMLA leave and to designate his absence as an FMLA protected absence.

75. Despite telling Norma Tardi on August 18, 2015 that he would send or give the Plaintiff an FMLA form to complete and to enable him to apply for FMLA benefits, the Defendant failed to do so. Instead, the Defendant continued to suspend the Plaintiff from work and terminated his employment.

76. The Defendant violated the FMLA by denying the Plaintiff the FMLA benefits he requested, suspending him from work, discharging him, retaliating against him, and, despite being repeatedly apprised of the Plaintiff's medical conditions and several written requests for a leave of absence and/or time off from work, including Dr. Chou's August 18th and Dr. Harris' August 20th doctor notes, the Defendant refused to provide the Plaintiff the requested FMLA papers.

77. By its actions and omissions, the Defendant denied the Plaintiff benefits under the FMLA, interfered with his opportunity to obtain FMLA benefits, and retaliated against the Plaintiff for requesting FMLA benefits.

78. The Defendant denied benefits, interfered with, and retaliated against the Plaintiff in violation of the FMLA because he exercised or attempted to exercise his FMLA rights.

79. The reasons Defendant has given for Plaintiff's discharge, interfering with his FMLA rights, and the denial of his FMLA benefits were false.

80. Defendant's actions and omissions violated the FMLA, including in discharging him, denying him benefits, retaliating against him, refusing to reinstate or rehire him, and interfering with his rights and opportunities under the FMLA.

81. The actions complained of above were and are willful within the meaning of the FMLA. The Defendant knew or showed reckless disregard whether its conduct towards the Plaintiff was prohibited by the FMLA.

82. The acts taken by the Defendant were not taken in good faith.

83. The Plaintiff has been damaged as a result of the Defendant's acts and omissions. As a result of Defendant's acts and omissions, the Plaintiff has suffered and will continue to suffer the loss of wages, benefits, overtime, and other damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and requests that:

A. Grant a cease and desist order against the Defendant, its officers, agents, and managers from violating the FMLA;

B. Enter appropriate injunctive relief awarding the Plaintiff the back pay, front pay, wages, employment benefits, and other compensation that was denied or lost;

C. Order Defendant to pay the Plaintiff damages for the injury or loss he suffered;

D. Award the Plaintiff all pre-judgment interest to which he is entitled;

E. Award the Plaintiff's his reasonable attorneys' fees and costs; and

F. Award such other and further relief as is just and appropriate, including nominal damages.

## JURY TRIAL

A jury trial is demanded on all counts which are triable by a jury.

Dated: June 30, 2016                           Respectfully submitted,


                  __s/Marty Denis_____
                  Marty Denis
                  Bethany Hilbert
                  Barlow, Kobata & Denis LLP
                  525 West Monroe, Suite 2360
                  Chicago, Illinois 60661
                  (312) 648-5570
                  *Attorneys for Plaintiff Daniel Mattei*